UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LINDA KLEIN,                                                                07 CV 2815 (GBD)(HBP)

                Plaintiff,

                                                 **PLAINTIFF'S FIRST**
                                                 **MOTION IN LIMINE**

        -against-

VERIZON SERVICES CORP.,
                Defendant.
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN
## SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S
## STATISTICAL EVIDENCE AND LIMIT THE SCOPE OF COMPARATOR EVIDENCE

### PRELIMINARY STATEMENT

      Plaintiff submits this memorandum of law in support of her motion *in limine* to preclude defendant from introducing statistics concerning the Verizon Public Communications workplace demographics and limit the scope of comparator evidence to managers in the ISG department. As set forth below, Plaintiff's motion should be granted and Defendant's statistical evidence should be excluded under Fed. R. Evid 401 and 402 because it is irrelevant comparator evidence and is has no relevance to the question of whether Defendant discriminated against Linda Klein because of her age and gender. Furthermore, Defendant's statistical evidence should be excluded under Fed. R. Evid 403 because its low probative value is substantially outweighed by its danger of unfair prejudice and likelihood of misleading the jury.

### BACKGROUND

      Linda Klein ("Plaintiff" or "Klein") was age 59 and a 25 year veteran of Verizon, as well as the Manager of the NY Business Office when she was informed by her manager, John Christensen ("Christensen") in late July, 2005, that as result of a "job consolidation" in a

corporate reorganization, that either she or a younger male, Gerard McCarthy ("McCarthy"), would lose their job in a Reduction in Force ("Reduction in Force", or "RIF") later that year. On October 6, 2005, Christensen met with Plaintiff and informed her that the consolidated job, called the IPP Sales and Service Manager ("IPP Manager"), was given to McCarthy, the younger male. At the end of October 2005, shortly before her termination was to become effective Klein interviewed for and was offered a job as a subordinate account management position, which was a demotion. Despite the fact that she was a second level manager, and the position was a first level manager position, with a significant loss of material job responsibilities and a reduction in salary and other compensation, she had no choice but to take the position as her husband was sick and she was the sole breadwinner in the family. Klein made multiple complaints of discrimination to her Executive Director, Larry Stevens and also complained to his manager, Kitty Linder.

Shortly after Klein filed the present lawsuit in March 2007, McCarthy, the younger male, voluntarily took another position in a different Verizon division. McCarthy left the IPP Manager position in April, 2007. Verizon thereafter discriminated against Klein, by twice passing her over and not placing her in the IPP manager position when it was vacated, but instead hand picked a woman over the age of 40 who was eight and a half years younger than Klein and very unqualified for the position. Verizon subsequently re-assigned Plaintiff from the first level account manager position to a different title, Specialist-Sales Support after planning a RIF in the ISG which only included her. This position was illusory and was almost immediately consolidated with the position of Specialist-Sales Support which was held by the incumbent, Jose Miranda, for four years. Plaintiff was RIF'd in November 2008 when Verizon terminated her employment.

In July 2005, just prior to the Reduction in Force ("RIF") that resulted in the "job consolidation" of Linda Klein and Gerry McCarthy's positions, Verizon Public Communications was comprised of six divisions under the leadership of Larry Stevens. These divisions included Sales, Info Systems, Marketing and Business Planning, Business Operations, ISO9001 and the Industry Service Group ("ISG'), of which Linda Klein was originally a second level manager. (Organizational Chart, VER0280, attached hereto as Exhibit 1). The small ISG division was an independent group selling phone lines to independent pay phone providers, and was distinct from the other groups, which were all interconnected with the retail side of the business called "VPC."

In Defendant's Motion for Summary Judgment, it offered statistical evidence that VPC's management profile as of July 2005 consisted of 52.4% women and 79.1% individuals over the age of forty. It argues that this statistical data refutes any inference of gender or age discrimination. (See Exhibit R to Defendant's Motion for Summary Judgment, attached as Exhibit 2.) Plaintiff anticipates that Defendant will attempt to offer the July 2005 VPC management profile statistics that it referenced in its Motion for Summary Judgment as well as additional statistics describing the VPC workplace composition.

## LEGAL STANDARD

The purpose of a motion *in limine* is to allow the trial court to rule on disputes over the admissibility and relevance of proffered evidence prior to trial. *United States v. Chan,* 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002). Under Rule 401 of the Federal Rules of Evidence relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible at trial. Fed. R. Evid. 402. Furthermore, relevant evidence may be excluded "if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "The district court retains broad discretion to balance the evidence's potential prejudice,.. against its probative value." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y 2008).

## ARGUMENT

### POINT I

### THE STATISTICAL EVIDENCE OFFERED BY DEFENDANTS SHOULD BE EXCLUDED AS IT IRRELEVANT COMPARATOR EVIDENCE

Defendant's statistical evidence should be excluded under Fed. R. Evid 401 and 402 because it is irrelevant comparator evidence and is has no relevance to the question of whether Defendant discriminated against Linda Klein because of her age and gender.

Statistical evidence is often used by plaintiffs to make out their prima facie case by pointing to disparate treatment of a purportedly similarly situated employees. Here, Defendant seeks to create the opposite inference from its statistical evidence- that Verizon Services Corp. could not have discriminated against Linda Klein on the basis of age and gender, because VPC has a high proportion of female managers and managers over the age of forty. Defendant should be precluded from introducing the July 2005 managerial profile evidence as well as any other statistical evidence concerning the VPC workplace demographics as such statistics are irrelevant comparator evidence. Such alleged statistics are also based upon unknown data that was not disclosed by Defendant. Instead, the scope of comparator evidence should be limited to include only ISG managerial employees at the first managerial level or higher, before November 2008, the date plaintiff was terminated. Furthermore, any statistical evidence concerning managerial

4

level employees who were RIF'd or left the ISG during a job consolidation, must be confined to only those managers who were involuntarily RIF'd or removed, as only those managers who left the ISG involuntarily are similarly situated to Klein.

### A. Defendant's Statistical Evidence Is Not Based On Employees Similarly Situated To Linda Klein And Thus Is Irrelevant Comparator Evidence

Irrelevant comparator evidence is not admissible. To introduce comparator evidence defendant must show that the comparators were "similarly situated in all material respects to the individual" with whom the comparison is being made. *Graham v. Long Island Railroad*, 230 F.3d 34, 39 (2d Cir. 2000). While, comparators need not be identical to the plaintiff, the standard requires "a reasonably close resemblance of the facts and circumstances" between the plaintiff and comparators. *Id.* at 40. See *Duck v. Port Jefferson School Dist.*, No. 07-2224, 2008 WL 2079916, at *8 (E.D.N.Y. May 14, 2008) (limiting relevant comparator discovery in discrimination case to those employees who were also employed as a coach – the same position held by plaintiff); see also *Moll v. Telesector Resources Group, Inc.*, No. 04–0805, 2007 WL 2892617, at *3 (W.D.N.Y. Sept. 28, 2007) (holding that individuals outside plaintiff's job classification were not relevant comparators).

The *Graham* Court recognized that the "all material respects" standard, does not require a rigid application of specific factors, however "working in different locations or reporting to different supervisors continues to be important to the similarly situated analysis." *Gambrell v. Nat'l R.R. Passenger Corp.*, No. 01- 6433, 2003 WL 282182, at *7 (S.D.N.Y. Feb. 3, 2003). See *Gonzalez v. N.Y. City Transit Auth.*, No. 00-4293, 2001 U.S. Dist. LEXIS 5908, at *57 (S.D.N.Y. May 9, 2001) (noting that employees who worked at different Transit Authority facility and reported to different management were not similarly situated to plaintiff); *Ramos v. Marriott*

*Int'l, Inc.*, 134 F.Supp.2d 328, 340 (S.D.N.Y. 2001) (noting that plaintiff and co-employee "answered to the same supervisor" as part of holding that plaintiff and co-employee were similarly situated).

VPC managerial employees working in departments other than the ISG are not similarly situated to Linda Klein and cannot be introduced as comparators. Each department within VPC had its own unique function and was directed by a distinct group manager responsible for making operational and personnel decisions for the department. VPC managerial employees in divisions other than the ISG are not proper comparators under the "all material respects" standard, as their circumstances do not have a reasonably close resemblance to the circumstance of Linda Klein. In particular, these managers differ in regards to two essential factors of the similarly situated analysis, in that they report to different supervisors and they work in entirely different units with their own unique functions. Furthermore, the VPC managerial profile referenced in Defendant's Motion for Summary Judgment is particularly ill suited to serve as comparator evidence as the statistics are based on all VPC managerial employees across the five retail divisions and the ISG, as of July 2005, before the dates of the RIFs in issue. Certainly these managerial employees are not similarly situated to Linda Klein, as the 2005 RIF and the 2008 RIF, the vehicles facilitating the discrimination against Klein, had not yet occurred.

Defendant contends that Verizon Public Communications has experienced a significant decrease in revenue resulting in the reduction in size of certain departments. As the facts and circumstances surrounding the reductions in size of each individual department differed in material ways, only those managerial employees in the ISG division, where Linda Klein worked are similarly situated to her. For instance, the other VPC divisions provided retail services, whereas the ISG serviced wholesale providers exclusively. This distinction is relevant as the

6

retail divisions owned, operated and serviced public pay phones owned by VPC that were being sold off to private payphone providers. The ISG serviced the private payphone providers exclusively and was a wholesale market, which used Verizon's phone lines. As such VPC and ISG were affected by the changing market and revenues in their own unique way and thus faced different concerns as the company downsized.

As departments saw a reduction in size, positions were consolidated and individual employees were told they would be terminated or to find a new position as part of the Reduction in Force. Those managerial employees who were *voluntarily* RIF'd cannot serve as proper comparators as the circumstances and facts surrounding their departure do not resemble that of Linda Klein. An employee who was RIF'd voluntarily or left the VPC voluntarily was not similarly situated to an employee, like Klein, who was involuntarily RIF'd or forced to leave. Employees in the former situation were not affected by a supervisor's decision-making concerning which employee to RIF or place in the consolidated position and which employee to force out of the company. Therefore, as the employer did not make an employment decision about these employees, their departures from the company were not based on impermissible factors and thus they cannot serve as proper comparators to refute an inference of discrimination.

Furthermore, VPC representatives and employees below the first level manager position are not similarly situated to Linda Klein, as the facts and circumstances of their employment differ in all material respects. Not only do these employees have different job titles, responsibilities, performance evaluations and supervisors to whom they report, but many non-managerial employees were unionized and thus faced entirely different procedures as the VPC saw a reduction in size, because they were governed by collective bargaining agreements. Therefore, statistics or evidence concerning VPC representatives or employees below the first

level managerial position, in any division including the ISG, are improper comparators and must be excluded as irrelevant.

Statistical evidence concerning both managerial and non-managerial employees in VPC divisions other than the ISG, as well as statistics concerning employees who were voluntarily RIF'd must be excluded as irrelevant comparator evidence. Similarly, statistics based on employees below the first level managerial position, including those non-managers in the ISG, must be excluded as irrelevant because these non-managerial employees are not similarly situated to Linda Klein.

**B. The Scope Of Comparator Evidence Should Be Limited To Managerial Employees In The ISG Department Between 2000 and 2008**

The comparator universe must be limited to include only managerial employees at the first managerial level or higher working within in the ISG group between 2000 and 2008, as they are the only VPC employees who were similarly situated to Linda Klein. There is a reasonably close resemblance of facts and circumstances between ISG managers at the first level or higher and Linda Klein as they all had similar job titles, they all ultimately reported to the same supervisor, had similar job responsibilities and concerns, and were assessed using the same or similar performance evaluations. Furthermore, the ISG provided national services with two business offices located in New York and Bloomington, Illinois providing the same services to independent pay phone providers. Thus, while managerial employees may have worked in physically different spaces, the facts and circumstances surrounding their employment were similar in all material respects.

Until late 2005, Christensen was the head of the ISG, and had the sole authority within the ISG to eliminate or consolidate positions within the division during a RIF, with the approval

of his manager. Between 2000 and the end of 2005 Christensen used these RIFs to engage in a pattern and practice of discriminating against older women. The facts and circumstances giving rise to the initial discrimination against Klein concerned a job consolidation within the ISG at the direction of Christensen, which was approved and ratified by his manager, Larry Stevens. This job consolidation was made in the course of a RIF in November 2005. Therefore, only the employees who were subject to this decision-making authority, had a possibility of having their positions consolidated or had a possibility of being involuntarily RIF'd by the same decision making authority are similarly situated to Plaintiff. While Christensen left his position as head of the ISG in late 2005, managerial level employees within the ISG continued to be similarly situated to Linda Klein from late 2005 to the time when she was involuntarily RIF'd in 2008. The particular decision maker, Christensen, was replaced but all ISG managerial employees continued to report to a common supervisor and were subject to the same decision maker as each other.

Managerial employees at the first level or higher working within the ISG before 2008 are similarly situated to Plaintiff and are the only relevant comparators that may be admitted as evidence.

## C. Any Statistics Offered By Defendant Concerning The Period After 2008 Are Irrelevant And Must Be Excluded

Any statistics offered by Verizon concerning the time period after November 2008 are irrelevant, as they occurred after Klein's employment was terminated. The issues in this case are focused on the period while Linda Klein was employed. Any RIF decisions after 2008 have not been examined because they are not relevant and have no bearing on the individual employment decisions at issue in this case. Employees in the period after November 2008, including managerial employees within the ISG, are not similarly situated to Linda Klein in all material

9

respects, as she no longer worked for Verizon in the ISG or anywhere else, for that matter. The only relevant evidence regarding the post Linda Klein 2008 RIF is whether the job duties she performed as manager of the New York business office or as an account manager, as well as the job functions of the IPP sales and services position, were performed post 2008 through the present. Thus, all other statistical evidence concerning the period after Klein was RIF'd in 2008 is irrelevant and must be excluded.

### D. Defendant's General Workforce Statistics Are Irrelevant To The Employment Decision at Issue in this Case

Statistical evidence regarding the composition of the Verizon Public Communications work force is not relevant because such evidence is not probative of the issue of whether Defendant discriminated against Linda Klein on the basis of her age and gender. For example, courts in this circuit have rejected raw statistics regarding an employer's workforce composition as irrelevant to the question of whether intentional discrimination played a role in discrete individual personnel actions. *See Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1270 (S.D.N.Y. 1990) (granting employer's motion *in limine* to exclude statistical evidence as "[t]he proffered statistical evidence regarding defendant's hiring practices is not relevant to the decision to terminate plaintiff whether taken in isolation or in the context of the other offered proof").

Statistics reflecting the workforce composition of VPC are irrelevant to the discrete employment decisions to RIF Linda Klein and demote her to a first level managerial position, then to pass over her by failing to promote or reinstate her to the IPP manager position[1] followed by the machinations of her reassignment and RIF in 2008. The managerial profile referenced by Defendant in its Motion for Summary Judgment is particularly irrelevant as it was based on

---

[1] The job title changed but the job responsibilities were essentially identical to Klein's responsibilities as manager of the New York business office.

10

employees prior to the August 2005 RIF, which facilitated the discrimination against Linda Klein and thus can shed no light on the employment decision at issue. Moreover, whether or not Verizon Public Communications has a high proportion of women or older employees in its workforce, has no bearing on the thought process employed by John Christensen in the 2005 RIF, Joseph Romanoski in the 2008 RIF, or Larry Steven's in verifying their decisions, or the thought process of Romanoski and Stevens in filling the IPP manger position twice when it became available. It also has no bearing on the 2008 RIF and termination of Klein. Even during a legitimate reorganization or force reduction, an employer may not dismiss employees for unlawful discriminatory reasons. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 111 (2d Cir. 1992). Moreover, Verizon's workplace demographics are irrelevant to the decision concerning which employee was most qualified for the consolidated IPP Manager position, or the sequence of events if discriminatory intent derived from the sequence of events in the 2008 RIF. *See Leibowitz,* 584 F.3d at 502.

Additionally, it should be noted that defendants never provided the formula, methodology or backup data supporting the statistical evidence they have previously relied on. Without information supporting their statistical evidence there is no way to verify the statistics accuracy or relevancy to the issues of this case, in any event.

Defendant's statistical evidence should be excluded under Fed. R. Evid 401 and 402 because it is irrelevant comparator evidence and is has no relevance to the question of whether Defendant discriminated against Linda Klein because of her age and gender.

POINT II

THE PROBATIVE VALUE OF DEFENDANT'S STATISTICAL
EVIDENCE IS SUBSTANTIALLY OUTWEIGHED BY ITS DANGER OF
UNFAIR PREJUDICE AND LIKELIHOOD OF MISLEADING THE JURY

Pursuant to Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The type of workforce statistics Defendant seeks to introduce at trial, which consists of nothing more than the percentage of female and employees over age forty employed at Verizon Public Communications, is not probative as it lacks adequate comparators and does not speak to the discrete employment decisions at issue, but has a high potential for confusion and prejudice. Moreover, more general statistics are not probative of the discrete employment decisions about Linda Klein's employment.

Defendant's statistical evidence regarding the demographics of VPC employees has low if any probative value. Courts will exclude statistical evidence as having a low probative value because it lacked comparisons to employees similarly situated to the plaintiff. *See Albert v. New York City Constr. Auth.*, 99 Fed. Appx. 306, 309-10 (2d Cir. 2004) (affirming district court's decision to exclude contents of an internal affirmative action report under Rule 403 because it lacked comparisons of applicants to those promoted); *Jimenez v. Big M, Inc.*, 86 F. Supp. 2d 236, 243 (S.D.N.Y. 2000) (finding statistical evidence of defendant's demographic employment patterns which purported to show percentage of Hispanic managers was lower than percentage of white managers were inadmissible because they had no probative value.) As argued above, Defendant's statistical evidence is not based on relevant comparator evidence and thus is of low probative value. Furthermore, evidence of general work place demographics is not probative of

the issue of whether or not the decision to RIF Linda Klein in 2005 or 2008 was based on her age or gender.

Accordingly, Defendant's statistical evidence is of low probative value but its danger of unfair prejudice and ability to confuse the jury is high. Defendant's evidence is intended to create an inaccurate perception of the Verizon Public Communications workplace demographics, without any background evidence showing that the naked statistics or its methodology support such a conclusion. The jury may be misled into believing that because Verizon employs a certain percentage of female and older employees, it did not take these impermissible factors of age and/or gender into consideration when making specific employment decisions affecting Klein. Furthermore, explaining the burden of proof to juries in employment discrimination cases and the proof necessary to show an inference of discrimination is difficult enough without muddying the waters with irrelevant workforce data that has no bearing on the employment decision at issue. Because this workforce data is highly prejudicial and likely to mislead the jury, it should be excluded pursuant to Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Plaintiff Linda Klein respectfully requests that the Court grant her motion *in limine* and to preclude Defendant from offering at trial any argument, documents or testimony regarding Verizon Public Communications or Verizon's overall workforce demographics.

Dated:		June 25, 2012
		New York, New York

										THE LAW OFFICES OF
										GAIL I. AUSTER & ASSOCIATES

										By: *[signature]*
										Gail I. Auster
										Attorneys for Plaintiff
										711 Battery Place, Suite 711
										New York, New York 10004
										(914) 707-4000