UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA KLEIN,

              Plaintiff,

  v.

VERIZON SERVICES CORP.

             Defendant.

07 Civ 2815 (AJN) (HBP)

# DEFENDANT'S PRETRIAL MEMORANDUM OF LAW

Scott H. Casher (SC 7903)
Leor J. Kaplan (LK 6101)
WHITE AND WILLIAMS LLP

Attorneys for Defendant
Verizon Services Corp.

9445189v.1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY..........................................................................................................2

FACTUAL BACKGROUND .......................................................................................................3

1. Verizon's Downsizing of its Public Pay Telephone Business .............................................3

2. The Industry Services Group (ISG) ....................................................................................4

3. Klein's Employment With Verizon .....................................................................................5

4. The 2005 RIF .......................................................................................................................5

5. The 2008 RIF .......................................................................................................................8

LEGAL ARGUMENT ..................................................................................................................9

1. The Framework for Analyzing Claims Under Title VII and the ADEA .............................9

2. Klein Cannot Prove Discrimination Under Title VII or the ADEA ..................................10

    A. The 2005 RIF .........................................................................................................10

        i. Klein Was Not Qualified for the Combined Position. ..............................10

        ii. The Circumstances Do Not Give Rise to An Inference of Discrimination...............................................................................................11

    B. The 2008 RIF .........................................................................................................13

3. Verizon's Decisions Were Based On Legitimate, Non-Discriminatory Reasons..............13

    A. The RIFs Were Conducted Pursuant to An Ongoing, Business-Motivated Group-Wide Downsizing. .....................................................................................13

    B. Verizon's Employment Decisions Concerning Klein Were Based On the Consideration of Neutral Factors Having Nothing to do with Gender or Age.........................................................................................................................15

4. Klein Has Failed To Establish That Verizon's Explanations Were Pretextual .................15

DAMAGES..................................................................................................................................16

CONCLUSION............................................................................................................................18

9445189v.1

## **PRELIMINARY STATEMENT**

The telecommunications industry has changed drastically over the last ten years, and certain Verizon departments, including Verizon Public Communications (VPC) which handles the public pay phone business, have experienced a significant decrease in revenues during that time. In response to these changes, and due to the economic realities that have accompanied them, Verizon has reduced the size of and even eliminated certain departments to match the need for their services.

Plaintiff Linda Klein was employed by a group within VPC known as the Industry Services Group (ISG). VPC and ISG have undergone numerous reductions in force (RIFs) since 2001 and have reduced their headcount significantly. In 2005, the ISG underwent a series of RIFs that, among other things, consolidated two second-level manager positions in the ISG into one. Just prior to the RIF, the two second-level manager positions were held by Linda Klein and Gerard McCarthy. McCarthy was ultimately selected for the consolidated position, and Klein sought, was offered, and voluntarily accepted a first-level account manager position in the ISG.

Klein remained employed by Verizon until 2008, when another RIF was conducted in response to further revenue declines in the VPC and ISG. Among other things, the 2008 RIF resulted in two account manager positions in the ISG (one held by Klein, the other by Jose Miranda) being consolidated into one position to meet budget requirements. Miranda was selected for the consolidated position. Unlike in 2005, Klein chose in 2008 to not look for another position within the company, and she was therefore separated from the company's payroll.

Though Klein alleges that she was the victim of gender and age discrimination by Verizon, both employment decisions arising out of the RIFs were necessitated by economic

-2-

realities, and the decision to select other Verizon employees for the consolidated positions was based on legitimate, non-discriminatory reasons.

Klein simply cannot meet her burden of proving discrimination based on employment decisions related to the 2005 RIF because: (1) she was not qualified for the combined position; (2) she was not subject to an adverse employment action; and (3) any arguable adverse action that did take place did not occur under circumstances giving rise to an inference of discrimination. An examination of Klein's second amended complaint, the operative pleading for trial, reveals that Klein has not asserted any factual allegations in support of her claim that she was RIF'd in 2008 on the basis of her gender and/or age. Therefore, even if she were successful at trial regarding her claim as it relates to the 2005 RIF, Klein would only be entitled to the difference between her level of compensation immediately prior to the 2005 RIF (Nov. '05) and her level of compensation after accepting the first-level account manager position up until her separation from the company (Nov '08), and that difference is approximately $45K.

## PROCEDURAL HISTORY

On February 18, 2009, Klein filed a Second Amended Complaint asserting the following causes of action: (i) Title VII – Discrimination; (ii) Violation of Title VII - Retaliation; (iii) ADEA – Discrimination; (iv) ADEA – Retaliation; (v) New York Human Rights Law – Discrimination; (vi) New York Human Rights Law – Retaliation; (vii) Administrative Code – Discrimination; and (viii) Administrative Code – Retaliation. The federal discrimination causes of action (First and Third Claims) and the New York City discrimination cause of action (Seventh Claim) do not refer to the 2008 RIF or Klein's termination in any way. Only the discrimination claim under the New York Human Rights Law lists, among a laundry list of other things, "terminating her employment" as one of the allegedly discriminatory acts taken by Verizon.

The parties filed their respective motions for summary judgment on January 3, 2011. On June 7, 2011, the Court issued an Order regarding plaintiff's motion for partial summary judgment and defendant's motion for summary judgment. The Court (i) denied plaintiff's motion for partial summary judgment; (ii) granted Verizon's motion for summary judgment and dismissed Klein's retaliation claims; and (ii) denied Verizon's motion for summary judgment with respect to Klein's gender and age discrimination claims.

By Order dated November 9, 2011, the Court denied the motions for reargument and reconsideration, and denied Klein's request for certification for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of the Order dismissing her claim of retaliation, holding that Klein failed to show that the Order of dismissal of the retaliation claim involved a controlling question of law as to which there is a substantial ground for difference of opinion, and that she failed to show that an immediate appeal from the Order would materially advance the ultimate termination of the litigation.

**FACTUAL BACKGROUND**

1.  *Verizon's Downsizing of its Public Pay Telephone Business*

In 2000, Bell Atlantic merged with GTE to become Verizon Communications. Verizon's principal business is telecommunications. Within Verizon at that time, there was a business division known as LiveSource, and within LiveSource there was a business division known as (VPC), which handled the public pay phone business. Within VPC, there was a business unit known as the ISG.

In 2003, LiveSource, the division overseeing VPC and ISG, had a female president, Katherine Linder, who is approximately the same age as Klein. Of the six executive directors reporting to Linder, four were women (one of the executive directors at that time was Larry Stevens). Of the 16 directors under Linder, nine were female (Christensen was a director at that

time).  Thus, more than 50% of senior management within the LiveSource organization was female.

VPC's revenues decreased significantly over the last decade due, in large part, to the increased use of cell phones and other electronic devices and the decreased use of public pay telephones.  Verizon had been reducing the size of VPC and the ISG dramatically since 2001, including by closing several offices and reducing the size of its workforce through RIFs. Starting in 2001, VPC and the ISG underwent several RIFs.  Both male and female VPC and ISG employees, above and below the age of 40, have been laid off, or "RIF'd," as a result of the reduction of VPC's revenues.  In 2004, VPC had 266 employees and the ISG had 66 employees. As of the beginning of this year, the ISG was moved out of VPC to a different Verizon organization, and the ISG now has only 16 employees; most of the other units within VPC no longer exist and there are not very many remaining VPC employees.

2. *The Industry Services Group (ISG)*

The ISG provided services and phone lines to independent pay phone (IPP) providers,. The ISG was tasked with selling payphone lines to IPPs, processing their service orders, developing network products for customers, and handling network trouble-shooting.  The ISG had always been a business unit of Verizon that employed many more women than men.  In 2001, John Christensen became the Director of the ISG, following the merger of Bell Atlantic and GTE.  As Director, Christensen was responsible for, among other things, determining which job positions could be sustained and which job positions had to be eliminated.  Between 2001 and 2008, Verizon closed most of the ISG offices in the country, including offices in Morristown, NJ, Philadelphia, PA, and Bloomington, IN, and Boston, MA.

3. *Klein's Employment With Verizon*

Linda Klein was employed by Verizon and its corporate predecessors from 1982 to 2008. Klein managed the ISG's New York office from 1993 to October 2005. Klein reported directly to Christensen when he became Director of the ISG in 2001. From 2001 to 2005, Klein held the position of second level manager in the ISG. Klein's responsibilities as a second level manager included "overseeing all functions in the general business arena, managing approximately 50 to 60 management and non-management employees," and she was responsible for servicing customer accounts – i.e., servicing wholesale lines to Verizon's IPPs. Essentially, if an IPP had an issue or wanted a particular type of service, Klein's team would address the inquiry. A few supervisors reported to Klein while she was a second level manager, and several customer services representatives also reported to Klein.

4. *The 2005 RIF*

In or about August 2005, Christensen held a conference call with Klein, Gerard McCarthy, a second level sales manager in the ISG, and other employees located in the ISG's Bloomington, Indiana, office to announce another RIF (the "2005 RIF"). Christensen advised Klein and McCarthy that their two job titles would be combined into one title, and that one of them would be chosen for that new position. Christensen informed Klein and McCarthy that he needed to combine their two titles due to decreasing revenues. The conference call was followed by a letter from Christensen's superior, Larry Stevens, the Executive Director of VPC, advising the entire VPC group about the need for additional reductions during the fourth quarter of 2005 due, in part, to revenue declines. At the time of the 2005 RIF, Klein was fifty-nine years old, McCarthy was forty years old, and Christensen was fifty-one years old.

The job responsibilities of the new combined title – "Manager - IPP Sales and Service" – were primarily sales oriented and included: (1) managing the sale of network product to IPPs; (2)

-5-

managing "winbacks" (i.e., the process of trying to win back customers); (3) managing the conversion of Verizon payphones to IPPs; (4) managing and tracking payment to IPPs; (5) managing business participation and new service test proceedings (i.e., where an IPP filed a complaint with a public utilities commission claiming that Verizon had overcharged them for their pay phone lines); (6) managing New England info techs voucher payment process; and (7) managing the New York business office.

Klein and McCarthy were both considered for the combined title. Christensen was the manager responsible for conducting the selection process, and he did so by using fifteen criteria relevant to the combined title and grading Klein and McCarthy on a scale of 1 to 5. McCarthy received a total score of 56 and Klein received a total score of 50. Based on that, Christensen selected McCarthy for the combined title, and Stevens approved Christensen's selection because he believed that McCarthy was the stronger candidate. Katherine Linder, a Verizon President who was senior to both Christensen and Stevens, and roughly the same age as Klein, was consulted about job consolidations within the ISG in 2005.

On or about October 6, 2005, Christensen informed Klein that he had selected McCarthy for the combined position of Manager IPP/Sales and Service Manager. Thereafter, and pursuant to Verizon corporate policy, Klein had thirty days in which she could remain on the payroll and search for other vacant positions within the company. Klein took advantage of the policy, and searched and applied for other positions, with the assistance of Stevens and Linder. Klein applied for several second level manager jobs outside of VPC but was not selected. A first level account manager position became available in the ISG, and Klein interviewed for and was offered the position. Klein accepted the offer and began working as the account manager position on November 1, 2005. In her new position, Klein reported to McCarthy and continued

9445189v.1

to perform some of her former responsibilities as a second level manager.  Christensen, the main target in this lawsuit by Klein, was also RIF'd and was separated from Verizon's payroll at the end of 2005.

Klein's change in job titles resulted in annual $5,200 decrease in salary (from $96,500 per year to $91,700).  Klein believed that her salary would not change with the change in job titles, that her salary would be "red-lined" (meaning it would remain the same), but Verizon's payroll policy did not permit Klein's salary to be red-lined.

In June 2006, frustrated about the change in her salary, Klein complained to Stevens and Linder of "discriminatory acts" related to the 2005 RIF.  Specifically, Klein expressed her concern that, "[s]tatistically, it appears that my 'RIF' was based on something other than merit."  At Linder's prompting, Verizon's Equal Employment Opportunity (EEO) office conducted an investigation into Klein's assertions.  In connection with the EEO investigation, Dennis Hogan, the assigned investigator, interviewed Klein, Linder and Stevens.  Klein never filed a complaint with Verizon's EEO Office; rather it was Linder who requested the investigation.  Klein also did not complain to any of her superiors in 2001, 2002, 2003 or 2004 about what she alleged to be "ongoing" discrimination by Christensen toward women.  Klein's complaint of discrimination was the first and only complaint ever lodged against Christensen.  There is no record of any complaints of discrimination against Christensen, other than Klein's complaint.

In or about March 2007, McCarthy left his position as IPP Sales and Service Manager and moved to the wireless side of Verizon's business.  After McCarthy left, Klein did not approach either Linder or Stevens to request McCarthy's old position, *i.e.*, the position she claimed to want.  The position was eliminated, and any remaining responsibilities were taken on by Joseph Romanoski, VPC's Business Operation Manager, in or about April 2007 (in addition

to his existing responsibilities).  Approximately seven months later, Vicki Leonard, a 53 year-old woman, took over the remaining responsibilities (in addition to her existing responsibilities). Klein never asked to take over Romanoski's responsibilities after he left, Klein never asked to take over Leonard's responsibilities when Leonard took over the responsibilities, and Klein never complained to EEO or anyone else.

     5.    *The 2008 RIF*

Another RIF within the ISG was conducted in 2008 in response to further revenue declines, to meet budgetary initiatives and to effectuate job consolidations (the "2008 RIF"). There were two account manager positions in the ISG at that time, one staffed by Klein and one staffed by Jose Miranda, and the two positions were going to be consolidated into one position to meet budget requirements.  Klein and Miranda were both considered for the consolidated position, and Romanoski and Leonard worked together to select Miranda for the position, due to fact that Miranda had a deeper and broader knowledge and proficiency in using Verizon's Legacy ordering and billing systems, which required high-level PC and computing skills that Klein did not possess.  The selection was approved by the Human Resource Business Partner for VPC, and Stevens, as the Department Approver.  Klein did not apply for any other positions at Verizon within the thirty-day period give to her following that decision, and, as per company policy, Klein was thereafter separated from the payroll effective November 28, 2008.  Several months later, Klein filed a Second Amended Complaint, with the only new claim being an allegation of retaliation.  The Second Amended Complaint contained no factual allegations of discrimination as a result of the 2008 RIF.  Judge Daniels dismissed Klein's retaliation claim in 2011 in connection with Verizon's motion for summary judgment.

## **LEGAL ARGUMENT**

*1.     The Framework for Analyzing Claims Under Title VII and the ADEA*

To prevail on her gender and age discrimination claims arising from the 2005 and 2008 RIFs, Klein must prove: (i) that she belonged to a protected class; (ii) that she was qualified to assume another position had it been available at the time of the RIF; (iii) that she was discharged (which she was in 2005); and (iv) that the discharge occurred under circumstances giving rise to an inference of discrimination. See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994); Maresco v. Evans Chemetics, Div. of W. R. Grace & Co., 964 F.2d 106, 110-11 (2d Cir. 1992).

If Klein succeeds in proving a prima facie case, the burden of production shifts to Verizon to articulate a legitimate, non-discriminatory reason for its employment decisions. McDonnell Douglas Corp., v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.E.2d 668 (1973); Walder, 2010 WL 3724464 at *6 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (1981)); Baguer v. Spanish Broadcasting Syst., Inc., 2010 WL 2813632, *13 (S.D.N.Y. July 12, 2010) ("Although [the Supreme Court] expressly declined to address whether the McDonnell Douglas framework is appropriate for ADEA claims … the Second Circuit continues to apply it) (citing Gorzynski, 596 F.3d at 106)).

After Verizon shows that its decisions in connection with the 2005 and 2008 RIFs were based on legitimate, non-discriminatory reasons, Klein must prove that the reasons offered by Verizon were false and a mere pretext for discrimination. Leibowitz, 584 F.3d at 499.  In the context of her gender discrimination claim, Klein must prove that Verizon's decisions were more likely than not based on discrimination – *i.e.*, that the proffered explanations were merely a pretext for discrimination. Walder, 2010 WL 3724464 at *5 (quoting Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997)).  As for her age discrimination claims, ,

however, it is not sufficient for Klein to show that Verizon's decisions were motivated, in part, by age discrimination; Klein must prove that age was the 'but for' cause of the employment decisions, and not simply a contributing or motivating factor. See Gorzynski, 596 F.3d at 106 (citing Gross v. FBL Financial Services, 129 S. Ct. 2343 (2009)); Baguer, 2010 WL 2813632 at *13; Skarzynski v. Roche Laboratories, Inc., 2010 WL 811445, at *10 (W.D.N.Y. March 1, 2010).

    2.    *Klein Cannot Prove Discrimination Under Title VII or the ADEA[1]*

        A.    The 2005 RIF

Klein will not be able to prove a claim at trial under Title VII or the ADEA based on employment decisions related to the 2005 RIF because: (1) she was not qualified for the combined position; (2) she was not subjected to an adverse employment action; and (3) any arguable adverse action that did take place did not occur under circumstances giving rise to an inference of discrimination.

            i.    Klein Was Not Qualified for the Combined Position.

The combined position of Sales Manager focused more heavily on sales than servicing. Among other things, candidates were expected: (i) to show an ability to generate $25 million in revenues and process 75,000 service orders annually; (ii) to have experience in marketing and sales to the IPP segment; (iii) to have knowledge of Legacy ordering and billing systems and the TRACS system; and (iv) to have product management experience. The evidence produced during discovery confirms that Klein's supervisors correctly concluded that McCarthy, with his extensive background in sales, was the stronger candidate for the combined position.

---

[1] Klein also brought discrimination claims pursuant to the New York State and City statutes, but those claims are analyzed under the Title VII and ADEA frameworks. See Leibowitz, 584 F.3d at 498, FN1; Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); Baguer, 2010 WL 2813632, *16 ("courts in this district have continued to apply the Title VII burden-shifting framework" to claims under the NYCHRL); Skarzynski, 2010 WL

-10-

Conversely, at the time of the 2005 RIF, Klein's sales experience was limited to indirect sales responsibilities for the IPP market, she had limited experience with TRACS (she misspelled the software's name in her e-mail to Stevens), and she had limited product management experience.

        ii. The Circumstances Do Not Give Rise to An Inference of Discrimination.

Even if Klein was qualified for the combined position, she will not be able to prove that an adverse employment action occurred under circumstances giving rise to an inference of discrimination. Her conclusory allegations of "disparate treatment" are not a substitute for evidence of discrimination by Verizon. Walder, 2010 WL 3724464 at *11 (citing Gorzynski, 596 F.3d at 101).

Klein does not allege in her second amended complaint, and has not come forward with any evidence during discovery, of a single fact that connects her gender or age to Verizon's decision to offer the combined position to McCarthy. Instead, she alleges that the decision to offer the job to McCarthy was consistent with her supervisor's "pattern" of forcing-out elder females, and advising retirement-eligible employees to "retire or be fired." However, such statements do not support an inference that Verizon's employment decisions in connection with the 2005 RIF were guided by Klein's age or gender. See Skarzynski, 2010 WL 811445, at *8-9 (indicating that isolated or offhand comments that do not refer specifically to the plaintiff's protected class are insufficient) (citing Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) ("[S]tray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination.")).

Klein's conclusory allegations that she had superior qualifications to McCarthy also do not create an inference of discrimination. Baguer, 2010 WL 2813632 at *15. Christensen relied

---

811445, at *6, FN10 ("The principles governing discrimination claims under the ADEA, Title VII and the NYSHRL

9445189v.1

on fifteen criteria to compare McCarthy and Klein, and he, Stevens and Linder were all more than fifty years old at the time of the 2005 RIF. Klein does not allege, and has not come forward with any evidence, that McCarthy was evaluated any differently than Klein in connection with their application for the combined position.

The factual circumstances surrounding the 2005 RIF confirm that Klein was not RIF'd because of her gender or age: (i) the senior-most ranking supervisor at the VPC in October 2005 was a female who was nearly 60 years old (Linder); (ii) the supervisors (Stevens and Christensen) responsible for selecting and approving the selection of McCarthy were all more than fifty years old at the time of the 2005 RIF; (iii) Klein's former position was eliminated by virtue of the 2005 RIF; and (iv) the candidate who was selected for the combined position was forty years old. See Walder, 2010 WL 3724464 at *11; Baguer v. Spanish Broad. Sys., Inc., 2010 WL 2813632 at *11 (S.D.N.Y. July 12, 2010) ("Courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the effected employee.").

The fact that the 2005 RIF effectively resulted in a slight pay decrease for Klein also does not support an inference of discrimination. Klein was an "at-will" employee who had no right (contractually or otherwise) to receive $96,700 annually from Verizon until a time of her choosing, irrespective of the company's financial condition, available resources and business plan. Klein (as well as many others at Verizon – male, female, young and old) was RIF'd for legitimate, non-discriminatory reasons, and her immediate assignment (without ever leaving Verizon's payroll) to a first level account manager position, approved by the same supervisors who had selected McCarthy for the combined position, allowed Klein to retain a comparable

---

are virtually identical, and as such these claims are evaluated using the same analytical framework.").

9445189v.1

salary to the one she earned as a second level manager – a position which no longer existed at the ISG.

Any inference of gender or age discrimination that could be drawn from the record is further buttressed by the fact that, as of July 2005, the vast majority of employees in the ISG were female and over the age of forty. The fact that Klein was selected for a different position less than thirty days after being RIF'd also directly negates any finding, let alone an inference, of discrimination. See Skarzynski, 2010 WL 811445, at *8. In fact, it was Christensen who convinced Verizon management of the need for an account manager position within the ISG, and it was his recommendation that Klein be chosen for that position.

### B. The 2008 RIF

The second amended complaint does not assert any allegations in support of Klein's claim that she was RIF'd in 2008 on the basis of her gender or age. In any event, Klein was in the protected classes (a female more than forty years old) when she was chosen for the account manager position in October 2005, which negates any inference of discrimination in connection with her termination in November 2008. See Baguer, 2010 WL 2813632 at *14 (being in protected class when chosen undermines any inference of age discrimination); Skarzynski, 2010 WL 811445, at *8. "A jury cannot infer discrimination from thin air." Norton v. Sams Club, 145 F.3d 114 (2d Cir.), *cert. denied* 525 U.S. 1001 (1998).

### 3. *Verizon's Decisions Were Based On Legitimate, Non-Discriminatory Reasons*

#### A. The RIFs Were Conducted Pursuant to An Ongoing, Business-Motivated Group-Wide Downsizing.

Once Verizon shows that its employment decisions were made pursuant to justified RIFs, that explanation is sufficient to rebut any presumption of discrimination. See Carlton v. Mystic Transportation, Inc., 202 F.3d 129, 135 (2d Cir. 2000); Tarshis, 211 F.3d at 37 (the Second

Circuit "recognize[s] that a reduction-in-force or restructuring that results in the elimination of jobs often is a legitimate reason for dismissing an employee") (citing Woroski v. Nashua Corp., 31 F.3d 105, 109 (2d Cir. 1994); Gallo, 22 F.3d at 1226 (cautioning that "courts must be careful not to second-guess an employer's business judgment that it makes in good faith"); Dister v. Continental Group, Inc., 859 F.2d 1008, 1116 (2d Cir. 1988)).

In Woroski, the Court held that evidence demonstrating that the defendant discharged the plaintiff as part of a business-justified company-wide RIF, conducted on an unbiased basis, sufficed to show a legitimate, non-discriminatory reason for its decision to terminate plaintiff's employment. 31 F.3d at 109. Here, both the 2005 RIF and the 2008 RIF were conducted pursuant to a business-motivated group-wide downsizing that had been underway since the Bell Atlantic/GTE merger, and Klein conceded that she is not challenging the propriety of the 2005 and 2008 RIFs. During the course of these two RIFs, approximately fifteen ISG employees either voluntarily retired or were separated from the payroll. The average age of the employees who were RIF'd in 2005 and 2008 was 45 and 43, respectively.

Further evidence that the RIFs were motivated by the assessment of the ISG's needs, and that neither Klein's gender nor her age were not taken into account, includes the fact that Klein's second level manager position in 2005 and her account manager position in 2008 were eliminated after the RIFs, that the combined position was eliminated after McCarthy left the position, and that the responsibilities were ultimately taken on by a woman almost the same age as Klein following Romanoski's departure. Woroski, 31 F.3d at 109; Tarshis, 211 F.3d at 37 (indicating that the elimination of positions during a RIF or restructuring tends to confirm a legitimate, non-discriminatory motivation).

-14-

9445189v.1

  B. Verizon's Employment Decisions Concerning Klein Were Based On the Consideration of Neutral Factors Having Nothing to do with Gender or Age.

In addition to the business-justified reasons behind the RIFs, Verizon's decision to select McCarthy and Miranda for the combined positions were justified by neutral factors having nothing to do with age or gender. This too rebuts any inference of discrimination raised with respect to the 2005 RIF and the 2008 RIF. Woroski, 31 F.3d at 109. In addition, Klein's allegation that she had "superior qualifications to McCarthy" is of no import – even if her supervisor's decision was objectively incorrect, that would not necessarily demonstrate that Verizon's proffered reasons are a pretext for discrimination. Skarzynski, 2010 WL 811445, at *10 (citing Karla v. HSBC Bank USA, N.A., 567 F. Supp.2d 385, 397 (E.D.N.Y. 2008)).

  4. *Klein Has Failed To Establish That Verizon's Explanations Were Pretextual*

Even if it were true that Christensen made comments to employees on the RIF lists that they should "retire or be fired," and even it were true that more women than men were RIF'd by Verizon, it still could not be said to constitute sufficient evidence of age bias. Woroski, 31 F.3d at 109-110 ("some evidence is not sufficient to withstand a properly supported motion for summary judgment [.]"). Klein is required to prove at trial that Verizon's stated reasons (business-justified RIFs and neutral factors unrelated to age or gender) are false. Woroski, 31 F.3d at 110. She is also required to prove that it is: (i) more likely than not her gender was the real reason behind the RIFs or Verizon's employment decisions; and (ii) that but for her age, she would not have been RIF'd. Skarzynski, 2010 WL 811445, at *11 (reciting the ADEA standard).

Under both standards, Klein's claim will fail at trial because the Verizon supervisors charged with conducting the RIFs consisted of men and women in their forties and fifties, and there is no evidence that any of those supervisors considered Klein's age or gender in selecting Klein to be RIF'd. Moreover, Klein was already within the class protected by the ADEA when

-15-

she was chosen for the account manager position in 2005. Accordingly, neither Christensen's "retire or be laid off" comment to certain RIF candidates, nor unsupported allegations of a "pattern" of "targeting" women for RIFs, would support a rational finding that Verizon's stated reasons are pretextual, and there is no evidence from which a fact finder could conclude that gender or age motivated, much less was the "but for" cause of, the challenged actions.

## DAMAGES

Klein alleges in her Initial Disclosures that between November 2005 and November 2007, she sustained lost wages in the amount of $95,614. However, that figure is grossly exaggerated. Immediately prior to October 2005, when Klein was the ISG call center manager, her annual base salary was $89,077. After October 2005, when Klein became an ISG account manager, her annual base salary was reduced approximately 5%, to $84,646. Thus, to the extent Klein is entitled to any back pay between November 2005 and November 2008 (when she left Verizon), she would be entitled to approximately $4,500 for each year, or <u>approximately $13,500</u>.

Klein also alleges in her Initial Disclosures that between November 2005 and November 2007, she sustained lost bonuses in the amount of $47,215. In 2005, Klein received a bonus of $19,734, and in 2006, Klein received a bonus of $18,363. Thus, to the extent Klein is entitled to any amount for "lost bonuses" between November 2005 and November 2008, she would be entitled to approximately $1,000 for each year ($19,734-$18,363), or a <u>total of $3,000</u>. She also claims she lost $5,000 per year in pension contributions and $2,500 per year in 401K contributions (allegations that Verizon denies). Nevertheless, to the extent Klein is entitled to any lost pension and 401K contributions between November 2005 and November 2008, she would be entitled to <u>approximately $22,500</u> ($7,500 x 3).

To the extent Klein is entitled to any back pay between November 2008 and the present, she would be entitled to a little less than $300,000 ($84,646 x 3.5 years).  To the extent Klein is entitled to any amount for "lost bonuses" between November 2008 and the present, she would be entitled to approximately $67,000 to date ($19,000 x 3.5 years).  To the extent Klein is entitled to any lost pension and 401K contributions between November 2008 and the present, she would be entitled to approximately $26,250 to date ($7,500 x 3.5).

| **Total Approximate Recoverable Damages:** | |
| --- | --- |
| Back Pay Between November 2005 and November 2008: | $ 39,500 |
| Back Pay Between November 2008 and Present: | $393,250 |
| Sub-Total: | $432,750 |
| Minus Pension Benefits Received: | $123,000 ($35K p/yr x 3.5 yrs) |
| Minus Unemployment Insurance Benefits: | $ 76,000 ($817 p/wk x 93 wks) |
| **Total:** | **$233,750** |

The balance of Klein's $1.2M demand, approximately $1M, is based on a grossly inflated combination of claims for attorney's fees, emotional distress, future lost wages, and punitive damages.

Klein's claim for emotional distress damages is very weak.  Klein never disclosed any economic or medical experts, thus she will be severely hamstrung in her attempt to prove psychological and economic damages.  At the age of 66 (her date of birth is 3/9/46), Klein will not be able to prove that she had the ability to remain employed in the same position in the ISG at Verizon, at the same rate of pay, in a department that is now a small fraction of the size it was in 2008.  There is no risk of a punitive damages award in this case, and Klein's claim for future lost wages is without merit, particularly given that she made little to no effort to find other employment after 2008, and did nothing to mitigate her damages.

-18-

## **CONCLUSION**

In light of the foregoing, it is anticipated that Klein's case will be dismissed in its entirety at the close of her case, pursuant to Fed. R. Civ. P. 50. If the case is submitted to a jury, Verizon will request that the Court require the jury to return only a special verdict based upon written questions, pursuant to Fed. R. Civ. P. 49(a).

Dated:  June 26, 2012                               WHITE AND WILLIAMS LLP

                                                    By:    /s
                                                        Scott H. Casher (SC 7903)
                                                        Leor J. Kaplan (LK 6101)
                                                        Attorneys for Defendant
                                                        Verizon Services Corp.

9445189v.1